Good morning, your honors. May it please the court. Ray Ayers for Appellant Aristeo Canelis Avila, who is here in the courtroom today. I'd like to just give a little bit of a brief background about what this case is all about. It's fundamentally about the right of a U.S. citizen who lives and resides in Southern California to have access to the courts of the U.S. in order to resolve a claim. One thing I want to ask you from the outset, because forget forum known convenes. Why didn't the district court discretionary, I mean, declaratory judgments, whether to grant them or discretionary? Why, forum known convenes aside, couldn't the district judge have said, I'm not going to consider this. There's really nothing before me. There is no attempt to execute on any property in the United States. Perhaps a dismissal should have been without prejudice. I mean, that's a technical issue. So that the issue does not continue, doesn't raise a false issue. But if I were a district judge, I've got plenty else to do rather than decide whether Mexican proceedings are valid, absent. And I would exercise my discretion to so hold, absent something happening before me. I would address that in two parts, Your Honor. First is procedurally the court could tee that up and say, I believe you're talking about the real heart factors and discretion to not. Entertain declaratory relief. Correct, Your Honor. And so the issue there is the court could have done that. But it would have to raise that issue and not in a motion to dismiss. In other words, it's not whether you state a claim. Of course we state a claim. The issue is whether despite the fact that you state the claim, the court is going to decide that it's not going to grant discretionary declaratory relief. Just because the court may decline to entertain jurisdiction as it has, doesn't mean that you fail to state a claim in the first instance. And if the court is going to consider that, the way that the court would do that is either by a sua sponte motion requesting briefing on the issue. Or by a motion by opposing counsel requesting that the court not exercise discretion over the requested declaratory relief. Well, you briefed the whole real heart matter to us. That's correct. We did, Your Honor. So let me ask you this. What more would you have told the district court at the time? Well, we would have argued. I mean, this is an argument you would have advanced to the district court, right? That's correct. In other words, had that been the issue, there was no ‑‑ that issue wasn't pending before the district court. And had that been pending, we would have addressed the different factors and submitted evidence as to those factors. And in point of fact ‑‑ My question, though, is the briefs address real heart, right? Our briefs in this case. The briefs on appeal do, yes, Your Honor. Yes. Okay. So what more ‑‑ I mean, why can't we just ‑‑ it's before us. Why shouldn't we just address it? In terms of ‑‑ I'm not sure I understand the question, Your Honor. What more would you have to say about whether or not the district court erred in exercising its discretion not to entertain declaratory relief? Well, that's the point, Your Honor. We don't believe that that's what the court did. The court granted a motion to dismiss. The court did not enter an order declining to exercise jurisdiction pursuant to real heart. There was no such motion pending before the court. The issue wasn't brief. And the first time there was any mention of a discretionary or an ability not to entertain the question, it was in the ruling. And so had the issue been T.W. Do you have any ‑‑ do you have any doubt that the district court would have declined to exercise jurisdiction if the jurisdiction existed? In light of what he said about whether it had jurisdiction. The court may or may not have done that, but we were entitled to tee that up and present the issue for the court and make a record and at least brief it fully and have a record for appeal if we believe the court was incorrect in exercising that discretion. That issue wasn't squarely put before the court. And so we think the court jumped the gun there. We should be allowed to replete and present the case which would, I think, limit the concerns that were clearly bothering the court about Mexican actions and Mexican enforcement. The issue is whether the judgment could be enforced here in the United States. And the concern is very real based on the fact that the appellees in this case actually filed claims with the same district court requesting enforcement. Well, I think the issues are related. One is the question of whether the lawsuit is ripe, whether they're standing. And then the second is whether the court properly exercised discretion under Brilhart. But it all has to do with the posture of this case, which is that at this present time, there is no indication that the defendants are seeking to enforce the judgment. So I think that plays into the issue of whether there's a sufficient actual controversy, whether they're standing here. And as Judge Motz pointed out, perhaps the court should have dismissed it without prejudice so that if there is enforcement action taken by the defendants, then Mr. Avila can then come into court and say, okay, now it's ripe, there's an enforcement action here. I'm seeking a declaration from a U.S. court to say that the judgment in Mexico can't be enforced. But that ripeness issue really does have to do with whether the court, looking at ten years' worth of litigation, ongoing litigation in Mexico, thinks it's appropriate then for the U.S. court to address these matters. So had you gotten notice that Brilhart was in play, what would you have argued to the district court as to why the court should hear the matter now, in light of the litigation history of this case? Thank you for that, Your Honor. First, I would argue that both Chiquita and Mr. Guillen filed requests seeking just that relief, enforcement of the judgment, recognition and enforcement of the judgment. This is the 2010 action? The related action, yes, Your Honor. Well, this was an action brought by the plaintiff, right? The subsequent action, this current one, yes, Your Honor. I'm talking about the 2010. When you're talking about their attempt to enforce the judgment here in the U.S., are you referring to the 2010 litigation brought by Mr. Avalar in which the defendant then counterclaimed, or are you talking about some other facts that perhaps I missed in the record? No, Mr. Canellos was not a plaintiff in that action. It was a counterclaim, but it was a lawsuit by a related entity that's involved and was also one of the judgment debtors. The problem with that issue, that created the subject matter jurisdiction problem. All right, I got it. So there was litigation brought and then defendants counterclaimed, and so you're referring to that counterclaim as an effort by the defendant to seek to enforce the judgment, correct? Yes, Your Honor. Clearly they're seeking affirmative relief for enforcement of the judgment in the U.S., and once we believe, during the course of that action, the purported judgment was assigned to Mr. Guillen, and at that point we began to raise the issue that we believe that as a matter of law because Mr. Guillen didn't actually pay any money and he was a co-debtor as a matter of law both under Mexican and U.S. law, which is what we would like to have an opportunity to show, is that there's no money owed and the judgment goes away because when a co-debtor receives a judgment, assignment of a judgment, without paying any compensation, then he cannot turn around and enforce it against his co-judgment. And so that took care of the 2010 matter, right? And since then, have there been enforcement attempts or efforts by the defendant here in the United States? Or are all of those actions happening in Mexico? Currently there's an action to foreclose on a trust in Mexico, I believe, and I don't believe there's an active litigation that we're aware of at this time. Has there been any demands for payment in the U.S.? No, Your Honor. I do believe there are UCC-1 filings that Chiquita made both in Arizona and in California, which would, I believe, constitute at least a cloud on title based on the judgment, claiming that they're owed $20 million or whatever based on the judgment. But I don't believe there are any active enforcement efforts. Why is there a need to do this now? Why don't you just wait to see if they… I think… Try to enforce that judgment under the uniform, what is it called, the Foreign Judgments Act under California law, which the federal courts incorporate? Certainly, Your Honor. That is an option to sit back and wait to let them enforce. The other option is to go and… Try to enforce. Excuse me, Your Honor? Try to enforce. Yes. And the other option is to say, we don't want this cloud hanging over our head. We don't want them just to say, well, we're not going to enforce now. Oh, we are. Oh, we're not. That's what… What's the situation that my client is in now? He has this cloud hanging over his head. He has a concern. He has an active business. He has property here. He's entitled to a judgment saying, no, that's not enforceable. It's never going to be enforceable. You can't continue to sort of wave it around even if you're not actively taking any action at this time. And I believe that's what the Shell Oil case stands for. It's exactly the same procedurally as this case. That's correct, Your Honor. But we think they got it right. Well, it's a little bit different. But in that case, I believe… Significantly different. I believe in that case the related action was filed by the judgment creditor and then dismissed because they had the wrong party and before they could do any further action. So at that time, there were no active matters pending. Shell Oil requested declaratory relief. Can you give us a better indication of what's happening in Mexico right now in terms of these litigations? It's still ongoing litigation and enforcement attempts by the defendants occurring in Mexico. Is that correct? That's correct. So there clearly is a controversy. You may say, well, there may or may not be active enforcement efforts in the U.S. But there clearly is an ongoing controversy between the parties. Right, but I think arguably that's a reason why it's premature to take it up here because if there's ongoing litigation in Mexico where the parties' rights are being disputed and Mexican courts may settle that matter, it would seem to me prudent to wait because the positions of the parties, the rights of the parties, the claims, the contours of the litigation may very well change by the time the defendants seek enforcement here in the U.S. If I may, Your Honor, two points. One is the action, as I understand it, in Mexico is simply an action by Mr. Guillen to foreclose on certain properties that were within a trust for purposes of enforcing the judgment. My understanding is that Mr. Canellos' counsel in Mexico is alleging that the trust has expired and that the trust is no longer valid and they cannot foreclose. It doesn't go to the same issues that we are seeking to address. That's part one. And part two, we have since learned, since this appeal was filed, Mr. Canellos has been informed that Chiquita, with or without the knowledge or assistance of Mr. Guillen, may be attempting to go back and undo the assignment and put in a straw man purchaser so as to avoid the consequences of the assignment to a judgment debtor with no compensation, which would terminate the judgment in our argument. And so they may be trying to undo that because they may have realized that they made a mistake. And we don't think that that would be appropriate in any way, shape, or form. We do seek to avoid that as well. We sort of skipped over forum nonconvenience. But the district court, as I understood the district court's order, he first found that granted the motion to dismiss on forum nonconvenience grounds. It wasn't clear to me, Your Honor, because it believed that... And then he went on to deal with the other motion to dismiss for failure to state a claim. I may be wrong, but I thought he did the motion to dismiss for failure to state a claim and granted that first and then the forum... Well, whatever. I mean, he could have. But forum nonconvenience says he's just not, you know, the case really belongs in Mexico. And our argument to that issue would be, or our response to that position would be, if and as we are willing to narrow the scope of the relief request simply to whether it's enforceable in the U.S., then you couldn't get rid of the case to Mexico because a Mexican court can't declare whether it's enforceable in the U.S. Whether a foreign judgment will be enforced in the U.S. is solely for a U.S. court to decide. So I don't think that he could possibly send the case to Mexico on the forum nonconvenience grounds based on the amended complaint that we requested to file. But he was dealing with the complaint that you had filed, and he decided he wasn't going to let you file an amended complaint. That's correct, Your Honor. So if you're only looking at the complaint that was before him, the operative complaint was the original complaint that you filed. The judge didn't have to let you file an amended complaint. There was a motion to amend at the time. That's correct, Your Honor. That was the operative complaint. But there was a motion to amend. Remember that operative complaint. As he said, it looks like you're just trying to redo what happened in Mexico in an American court, and you can't do that. Assuming that the court could not reach the motion to amend and say, I'm not going to allow you to amend. Based on what's in front of me, I'm going to dismiss for forum nonconvenience. We did have several arguments addressing that issue, namely that there was no waiver of the statute of limitations. Right. I mean, that's a question for the ‑‑ if they had waived any statute of limitations, then I ‑‑ They did not, though. Well. Help me out with limitations. I know what settled case law is. This is all Mexican related. If the claim, any claim now, is time barred under Mexican law, I understand the doctrine of forum nonconvenience, that the Mexican forum is not convenient precisely because of the existence of the limitations defense. How does it ‑‑ how does the limitations filter in to the case at all? The theory would be that if you try to enforce the United States limitations, do not begin to run until the attempted enforcement? Well, I don't think that the Mexican statute of limitations would be applicable to claims in the United States, and simply as a basis issue, in order to show that there's an alternative forum at all, you have to show that there's a valid claim that could be stated in the alternative forum. But if there's a limitations bar in Mexico, that makes Mexico ipso facto not a convenient forum. That's correct, Your Honor. And it's the burden of the moving party, Mr. Guillen in this case, to demonstrate that the statute of limitations is not expired, or agree that he would waive the statute of limitations in their brief counsel. Well, doesn't that highlight the importance of waiting for a dispute actually to exist in the United States? Because it would seem to me that the question of limitations is so tied up with the merits of the claim under Mexican law that the American court should not simply be, on the basis of theoretical harm, reviewing the judgment of the decisions of the Mexican courts. We're not asking the court to review the decisions of a Mexican court. We're asking the court to determine that subsequent events that took place during the 2010 federal litigation caused the judgment to be terminated and no longer enforceable against Mr. Canellos. So we're not asking the court to go behind or do anything that would impact the courts in Mexico. It would simply be a ruling that says, based on what's transpired since, this judgment is not enforceable against Mr. Canellos in the United States. And by virtue of the assignment, Mr. Canellos owes no money to Chiquita.  Thank you, Your Honor. Good morning. Cindy Brand on behalf of Arasteo. Keep your voice up. Oh, I'm sorry. Cindy Brand on behalf of Arasteo Canellos-Gaillan, who we are referring to in this case as Mr. Gaillan, because the plaintiff and defendant have the same name. They're all related. Yes. Your Honor, Mr. Mandig, Michael Mandig, is here on behalf of Chiquita, and we have agreed that I will take the first ten minutes of time and he will take the final five minutes. That's okay. Okay. Your Honor, I think the court has raised some very good points by the questions that you have given to the appellant. And one of the main things I want to point out to the court first is the fact that there was never any opposition filed to the motion to dismiss. So most of the claims that are currently being raised were raised for the first time on appeal. Now, the local rules in the Southern District Court, Rule 7.1F3A, specifically says that a party opposing a motion or other requests for ruling by the court must file a written opposition. And if they choose not to oppose the motion, then they must file a notice that they're not opposing it. And under Section C, a waiver is... Well, you could construe their motion to amend as an opposition. Well, it didn't address... Because if the court had granted the motion to amend, it would have put the case in a little bit of a different light. But the court declined to hear the motion to amend, and the motion to amend did not address any of the issues that were raised in the motion to dismiss. Well, it would have started... It would have been a new complaint, correct? Right, but it wasn't time to file. My understanding from the new complaint is that it focuses more on what would probably be an appropriate claim here in the United States, which is under the Foreign Money Judgments Act. This particular judgment is not enforceable for whatever reason. They can tuck under... They can bring it under that statute. Well, Your Honor, the problem with that, though, is that under the case cited by the appellant, by plaintiff, is the Shell case. And the Shell case is very distinguishable from this case. In that case, it was U.S. companies with U.S. assets that... And they were trying to do what amounted to a preemptive strike in order to keep the Nicaraguan plaintiffs from coming in and attaching any of the assets. In this case, we don't have any U.S. assets, and we don't have U.S. companies. So even though Shell... You have a U.S. citizen. You have a U.S. citizen, correct, who may have, from what we understand, a condo in Irvine. But the majority of the assets, all the parties are Mexican nationals. Is there any attempt... Is there any active attempt to enforce the Mexican judgment in the United States? No, Your Honor. And, in fact, the defendant, Mr. Gayan, under oath stated that he had no intention of seeking enforcement of that judgment in the United States. Who brought the counterclaim in the prior litigation? That was actually brought by Chiquita, Your Honor. And what happened was that after there was an assignment, my client, Mr. Gayan, kind of stepped into the shoes of Chiquita, and therefore that cross-claim, the counterclaim was there already. But my client never took any enforcement action on it. Was that counterclaim a claim for enforcement of the judgment against... It was a defensive claim for enforcement of the judgment, right, because the company, Agricola, that had actually filed the original lawsuit, is actually owned, I think, 90.78 percent by Mr. Avila, the plaintiff in this case. So he really was the same plaintiff seeking a... Joanne, what's happened to that litigation? I'm sorry, was I... And what has happened in 2010 to that litigation? It's gone, right? It's all gone. It's been all dismissed, and Mr. Gayan has no intention of seeking enforcement in the United States. What about the UCC filing in Arizona? I didn't know... You know, my understanding is that was done by Chiquita years ago, and, quite frankly, Mr. Gayan doesn't have any knowledge of it. I didn't have any knowledge of it. Well, we have somebody who might. True. Let's say we agree with you that it's premature that there's no actual controversy for purposes of going forward with this particular litigation. Why should dismissal be with prejudice instead of without prejudice? Because under the facts that are set forth in either complaint, the proposed, amended, or the current complaint, there is no way that they can state a claim in the United States. There's no controversy in the United States. None of the contracts... But if defendant seeks to, let's say, a year from now, enforce the judgment, wouldn't he have a right to come back to court to seek declaratory relief? If my client, Mr. Gayan, seeks... And how could he do that if it's with prejudice? Well, he would have the right to defend himself, certainly, and he could bring all these claims as a defense to that lawsuit. But I don't know that he would necessarily have a right to come in under declaratory relief. If we were seeking to enforce the judgment, it would only be in a defensive action on his part. What concerns me, frankly, is that a dismissal with prejudice would put another quiver in his boat, saying this was all considered before and it's gone. I mean, I don't see any reason why, as a practical matter, dismissal without prejudice is... If I'm exercising my discretion not to hear this dispute because there really is nothing actively going on right now, why shouldn't a dismissal be without prejudice? I think because the point is that if you dismiss it, they're just going to keep bringing the case again and again and again. It costs $500 or something. Right, but I mean, they've had litigation going on for 10 years in Mexico. $500 is nothing to keep bringing these cases. I mean, if you cannot state a claim and there are no facts under which you can state a claim, there's case law directly on point that says that the case should be dismissed with prejudice. It's Spain versus Ball. If we were to affirm the motion to dismiss on grounds of forum nonconvenes, it should be without prejudice. I agree in that sense, yes, if we limit it just to that. And if we don't address the issue on the motion to amend... Well, you're the one who filed the motion to dismiss on forum nonconvenience grounds, right? Yes. Right. So why didn't you waive any statute of limitations once the case got to Mexico? Your Honor, we were never asked to. That was never an issue that was raised. As no opposition was filed, that was never an issue that was raised. Additionally, Your Honor, there's ongoing litigation in Mexico that's been going on for years. So I gather that means you would be willing to waive any statute of limitations that might exist in Mexico? Well, there is... I believe it would all have to depend on what those statutes are because there's statute of limitations as dealing with prior judgments from years before. I don't know that they'd be willing to waive those, but they may be willing to waive something for the ongoing litigation. The whole key factor in a forum nonconvenes analysis is that there's an adequate forum. And our case law is pretty clear that if there's a statute of limitations issue, not an adequate forum. Your Honor, however, that was raised for the first time on appeal. It was not raised in the lower court. No, but it's your burden to show that there's an adequate forum on a motion. Well, Mr. the plaintiff's... That's your affirmative burden. The plaintiff's own expert, Mr. Arezia, states in his declaration that was filed by plaintiffs that the statute of limitations has not run in Mexico and that they can still file. So if their own experts have stated that the statute of limitations has not run, then the statute hasn't run. Additionally, Your Honor... You're going to say that in Mexico? Well, I think so because if it has... He did his legal analysis and he's saying that it hasn't run. I mean, I'm still questioning which statute... I don't think that the fact that his expert says it would make you concede the point. Well, true, but the question is which statute. I mean, there would be so many statutes. It seems to me that the plaintiff should have filed in opposition to the motion, and if they had filed in opposition to the motion, they could have identified which statute of limitations they were talking about, and then we could have addressed that specific issue. Well, clearly I'm enamored with this idea, but why isn't the best thing to do is to avoid the forum non-convenes issue entirely and say, look, he didn't do it on this ground, but the fact of the matter is clearly the district judge did not want to entertain this action because there was no real-life controversy before him, so the dismissal was appropriate, but it really is best to do it on the grounds of the district judge's discretion on a declaratory judgment action. Why doesn't end the dismissal without prejudice and if there's another action filed the district judge can rule promptly upon it? It seems to me that a lot of legal issues are avoided, including limitations, if you follow that. That clearly was a district judge's impulse. I mean, why should I be reviewing all of this when there's nothing really active going on before me? In New York or going on in the United States. Right, Your Honor, and if the court would have done that and dismissed without prejudice, I mean, we certainly would have accepted it. I'm not saying that that would have been wrong in any manner. I certainly wouldn't be standing here arguing with that if the court had done that. So if this court wishes to remand with the instruction that it's dismissed without prejudice, we accept that. Well, we'll affirm on the basis that dismissal was appropriate but on a different ground. Yeah, that's certainly acceptable, Your Honor. And my time is up. Thank you. Thank you. Good morning. Michael Mandig from Tucson on behalf of Chiquita, and I would invite you, Judge Motz, to think about visiting Tucson in addition to California. I don't know if the panel has any questions for me. Is there an UCC filing in Arizona? There was, and I'm sure it still shows a record. I don't know whether it was renewed or not. They last five years. Unless you renew them, they expire. And I honestly don't know whether since the assignment of all the rights. If it's been assigned, shouldn't you withdraw it instead of waiting for non-renewal? Well, if it's expired, it's expired. Well, that's different. I mean, if it hasn't expired. Yeah. If it's dead, it's dead. But suppose it's still alive. Shouldn't you kill it? It's not Chiquita's place to withdraw, alter, or change the rights that have been assigned to Ms. Brand's client. Frankly, I hadn't considered the issue until the question came up this morning. But I know there is a UCC filing. It's in the briefs. I understand that. From my point of view, from Chiquita's point of view, it has transferred all of its right, title, and interest in the debt and any underlying security, including the trust in Mexico and the security interest confirmed by the UCC filing. And it's not ours to fool with anymore, I guess is what I would say. So Chiquita's just sort of stepped back from this. That's been a heartfelt hope, Your Honor, is that Chiquita at some point will be able to say that we're done with this. If the filing is not dead in Arizona, could the plaintiff bring an action there to try to set it aside on the grounds that it constitutes a cloud upon his property in Arizona? I suspect that's theoretically possible, sure. I thought there was also a UCC filing here in California as well. Not that I recall. If there was, I'm not aware of it. Because we're dealing with foreign debtors, the filing that I'm aware of was made with the recorder of deeds in Washington, D.C., which is what's required by the Uniform Commercial Code in dealing with a foreign debtor. I'm not aware of any filings anywhere else. That doesn't mean they don't exist. I just don't know of them. It is correct in that prior litigation, the prior case, that Chiquita filed counterclaims to enforce the judgment against the plaintiff in this case. Yes, that's true. And the counterclaim was essentially a mirror image of an affirmative defense that we pled in one of the paragraphs of our answer, basically saying that a variety of the claims that were asserted in the first lawsuit were precluded because they had been merged in and were cut off by the judgment that had been entered in Mexico. So really it's sort of a flip side of a res judicata defense, but pled as a counterclaim. But that litigation is gone. That case was dismissed for lack of subject matter jurisdiction. The subject matter jurisdiction problem was cured by changing the plaintiff and then refiling the case that brings us before you. If the plaintiff were to challenge a UCC filing wherever one is filed, the action would have to be brought in state court, correct? Well, unless there were subject matter jurisdiction in the federal court. It's simply a state law legal issue that could be brought. Oh, that's right. There could be diversity. Yes, absolutely. Now, as far as I listen to Mr. Ayer's description or summary of what may or may not be going on in Mexico, none of us has tried to wade in and give you a detailed and comprehensive history of the litigation that's gone on there. Suffice to say, there's been a lot of it, civil, commercial and criminal cases over the years. And there's still litigation ongoing down there involving the plaintiff in this action, the defendants of this action and others. So in that sense, I think that it's clear that the parties have at various times availed themselves of the Mexican forum to litigate a variety of issues relating to the enforcement of this debt. There's no reason why they're, that I can see, there's no reason why they're not entitled to continue to do that. And unfortunately, there may be no end in sight down there. Maybe they can settle it. We made a, we gave it a good try in the first federal court litigation. We spent a fair amount of time with a magistrate in San Diego trying to do just that. But as is the case with many family feuds, we couldn't get it done. I think you had about a minute and a half for some rebuttal. Pardon me, thank you. With respect to whether the court can simply say that the trial court was really going on about the Brillhart and that's really what it was doing, which I think it's clear that's really what it's doing. Because I believe it's pretty straightforward that at least on the elements, a claim can be stated. Whether the court has to hear it is a different issue. And I believe you asked about whether- I get affirmed on different grounds all the time. In fact, that's probably the only reason I get affirmed. I would point to page 45 and 46 of our brief. There's a case from the Sixth Circuit and a case from the Second Circuit we cite for the proposition that where the court dismisses on a 12B6, but actually was doing what the court did here and applying the Brillhart factors, that's an abuse of discretion and is reversible. Because you can't mix and match the two. And that was Goodrich, Gulf Chemicals, Inc. versus Phillips Petroleum. And then the Mueller versus Olin Mathison Chemical Court. And the court said there was no controversy. So it's clear the dismissal order he entered was not based on the proper exercise of his discretion under the Declaratory Judgment Act. As we hold the order was improperly grounded as a matter of law, the fact that the complaint could also have been dismissed as a matter of discretion does not insulate the dismissal from our review. So the court said you failed to exercise any discretion because- But not by suggesting that it's insulated from review, but it would simply say it was appropriately dismissed and whether or not the state's claim need not be decided. I think that the result would be a reverse and remand for the court to have that issue briefed and then make a ruling on that issue rather than the court doing- I think district judges must be out on the golf course a lot in your view. And then briefly, the page 7 of- Why didn't you respond to the motion to dismiss? Because we filed a motion to amend. We were six days late in simply filing as a matter of right based on the rules changes. And when we realized that, we said, oh, we have to file a motion to amend. Because simply by filing the amended complaint would have mooted the other motion and we wouldn't be able to fight the issues on better grounds. We thought that we addressed the forum issues. And it was clear that in terms of whether there's a controversy in the prior action, page 7 of Mr. Guillen's complaint, he asked for a declaratory judgment. And he indicates this is an active, ongoing dispute regarding the rights and liabilities of the parties. Asked for the court to enter judgment in his favor. And now counsel is arguing that my client can't do the same thing, but in reverse, we have to sit back and play defense. We think the Shell Oil case demonstrates that's not the case. That under the declaratory relief act, we are entitled to be proactive and have our day in court on that issue. Thank you very much. Thank you very much. We appreciate your arguments on this interesting case, and the matter is submitted at this time.
judges: Motz, Paez, Nguyen